UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN GORMAN,

                      Plaintiff,

      -against-                                1:14-CV-0434 (LEK/RFT)

RENSSELAER COUNTY, *et al.*,

                      Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff John Gorman ("Plaintiff") commenced this action alleging civil rights violations pursuant to 42 U.S.C. § 1983 and related state law claims. Dkt. Nos. 1 ("Complaint"); 15 ("Amended Complaint"). Presently before the Court are Motions to dismiss for failure to state a claim by Defendants Rensselaer County, Sheriff Jack Mahar ("Mahar"), Anthony Patricelli ("Patricelli"), Tom Hendry ("Hendry"), and Kathleen Jimino ("Jimino") (together, the "County Defendants");[1] and Dr. William McIntrye and Public Safety Psychology PLLC (together, "PSP") (collectively, "Defendants") pursuant to Federal Rule of Procedure 12(b)(6). Dkt. Nos. 5 ("County Motion"); 9 ("First PSP Motion"); 27 ("Second PSP Motion"). For the reasons that follow, the First PSP Motion and County Motion are denied as moot, and the Second PSP Motion is granted.

**II.    BACKGROUND**

    **A. Procedural History**

Plaintiff filed his original Complaint on April 16, 2014. Compl. PSP and the County

---

[1] The Court notes that Defendant Undersheriff Patrick Russo has yet to appear in this action. See Docket.

Defendants each moved to dismiss the Complaint for failure to state a claim. Cnty. Mot.; First PSP Mot. Plaintiff then filed an Amended Complaint on May 31, 2014, Am. Compl, and PSP moved to dismiss the Amended Complaint, Second PSP Mot.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998). Moreover, "[t]ypically, the filing of an amended complaint following the filing of a motion to dismiss the initial complaint moots the motion to dismiss." Brown v. Napoli, No. 07-CV-838, 2008 WL 4507590, at *2 (W.D.N.Y. Sep. 29, 2008) (citing Haywood v. Republic Tobacco, Co., L.P., No. 05-CV-842A, 2007 WL 1063004 (W.D.N.Y. Apr. 6, 2007)). Accordingly, both the County Motion and the First PSP Motion are moot because they were filed before the Amended Complaint. See Byng v. Campbell, No. 07-cv-471, 2009 WL 152708, at *1 (N.D.N.Y. Jan. 21, 2009) (denying defendant's motion to dismiss as moot where plaintiff filed an amended complaint and motion only addressed original complaint).

Although the Second PSP Motion merely incorporates by reference the arguments made in the First PSP Motion, see Second PSP Mot., both PSP and Plaintiff agree that the allegations against PSP in the Amended Complaint are virtually identical to those alleged in the original Complaint, see id.; Dkt. Nos 27-2; 29. Accordingly, the Court considers the arguments set forth in the First PSP Motion in determining whether to dismiss the allegations against PSP in the Amended Complaint. See Howard v. Rosales, No. 12 CIV. 5263, 2014 WL 969683, at *1 (S.D.N.Y. Mar. 12, 2014) (applying motion to dismiss original complaint with respect to amended complaint where allegations in amended complaint were virtually identical).

2

**B. Factual Background**

The factual history underlying this case is extensive and primarily concerns actions attributed to the County Defendants. Because the County Motion is moot, the Court recites only those facts necessary to contextualize and resolve the pending PSP Motion. For a complete statement of Plaintiff's claims, reference is made to the Amended Complaint.[2]

*1. Harassment*

Plaintiff has been employed by the Rensselaer County Sheriff's office since July 2008. Am. Compl. ¶¶ 2, 14. From 2008 until October 2012, Plaintiff had an impeccable work record and received numerous performance awards. Id. ¶ 16. Plaintiff attained the rank of provisional sergeant and was on the civil service list to become a permanent sergeant. Id. ¶¶ 2, 17.

Patricelli is the Master Sergeant of the Rensselaer County Sheriff's Department. Id. ¶ 10. Patricelli had been in a relationship with Plaintiff's sister for twenty-seven years until October 8, 2012, when Plaintiff's brother informed their sister that Patricelli had been cheating on her. Id. ¶¶ 18-19. Plaintiff's sister confronted Patricelli and ended the relationship. Id. ¶ 19.

Later that day, Patricelli called Plaintiff at work and stated, "thank your wife, thank your brother, thank you." Id. ¶ 22. Throughout October 2012, Patricelli followed Plaintiff's every move at work using the facility camera system. Id. ¶ 31. Patricelli would frequently pass by Plaintiff's work assignment area and shake his head and smile in an aggressive way. Id. ¶¶ 32, 36. Although

---

[2] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Amended Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

Patricelli was not Plaintiff's direct supervisor, Patricelli would unnecessarily check Plaintiff's work. Id. ¶¶ 34-35. From October 2012 through June 2013, Patricelli continued to harass Plaintiff during work and at meals. Id. ¶¶ 37-39, 47, 51, 53, 58, 92. On February 15, 2013, Patricelli called Plaintiff at home and threatened to break his jaw. Id. ¶¶ 70, 78. On April 8, 2013, Plaintiff sought and received an order of protection against Patricelli from the Schaghitcoke Town Court. Id. ¶ 114. Plaintiff was also harassed repeatedly by other members of the Rensselaer County Sheriff's Department, who were friends with Patricelli. See id. ¶¶ 40-42, 55, 105, 128, 143.

Plaintiff filed numerous workplace complaints regarding the harassment to which he was subjected, as well as criminal complaints against Patricelli. See id. ¶¶ 26, 27, 60, 73, 75, 83, 94, 104, 151, 154. In response, Plaintiff's supervisors shifted his work responsibilities to duties normally reserved for new employees. See id. ¶¶ 28, 66-67, 105-08, 129, 145. Plaintiff was also removed from eligibility to become a permanent sergeant, and replaced by an ineligible candidate, in response to Plaintiff's filing of complaints and actions taken following the harassment. See id. ¶¶ 66-68.

### 2. Medical Issues and Application for Benefits

The harassment and hostility to which Plaintiff was subjected caused him to fear for his and his family's safety; as a result, Plaintiff began to experience chest pains, shortness of breath, insomnia, depression, and "dark thoughts." Id. ¶¶ 72, 81, 87, 109, 117, 145-48. On July 15, 2013, Plaintiff visited his primary care physician and was admitted for a psychiatric evaluation. Id. ¶¶ 147-48. Plaintiff "was taken out of work" by Dr. Alan Fogel from July 19 through August, 1, 2013. Id. ¶ 150. On August 1, 2013, Dr. James Thalmann submitted a letter removing Plaintiff from work "for ongoing distress for an undetermined time period." Id. ¶ 153. Dr. Thalmann

4

diagnosed Plaintiff with acute stress disorder and panic disorder.  Id. ¶ 157.

On July 18, 2013, Plaintiff filed a "207-C application" for benefits while on medical leave. See id. ¶ 149.  In connection with his 207-C application, Plaintiff was directed to undergo an independent medical examination ("IME") by Dr. McIntyre, a psychologist at PSP, who had been contracted by the Rensselaer Sheriff's Department for the purpose of performing the IME.  See id. ¶¶ 13, 168-69, 230, 238.  Dr. McIntyre knew that the medical evaluation would be used by Sheriff Mahar for purposes of determining Plaintiff's eligibility for benefits.  Id. ¶ 238.

Plaintiff twice met with Dr. McIntyre to undergo psychological exams.  Id. ¶¶ 161, 167. During both interviews, Dr. McIntyre "engaged in minimizing the facts and . . . Plaintiffs [sic] feelings in regards to them."  Id. ¶ 170.  Dr. McIntyre indicated in his report that all of Plaintiff's workplace reports had come back "unfounded."  Id. ¶ 171.  Dr. McIntyre's evaluation dated December 22, 2013, included several misrepresentations that he knew to be false, including: "that the Plaintiff was told by the Union, the Sheriffs office, and human resources that his issue not [sic] work related but personal, that Ruth Virbert [t]old him that his issue with Patricelli was personal, [and] that the Plaintiff told Dr. McIntyre that people were out to get him."  Id. ¶ 172.  Dr. McIntyre's report was "created in conspiracy with and/or at the direction of the other Defendants in order to deny [Plaintiff] 207-c and other benefits."  Id. ¶ 173.

Sheriff Mahar denied Plaintiff 207-C benefits.  Id. ¶¶ 182, 198, 206, 220.  Pursuant to a collective bargaining agreement, the denial of Plaintiff's application was then submitted to an arbitrator, who affirmed Sheriff Mahar's determination.  See id. ¶ 241.

**C. Summary of Allegations**

In the Amended Complaint, Plaintiff alleges, in relevant part, the following claims: (1)

Defendants retaliated against Plaintiff for filing workplace complaints in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, New York Civil Service Law § 75-b, and New York Labor Law § 740; and (2) Dr. McIntyre negligently misrepresented facts in his medical evaluations, which he knew would be relied on by Sheriff Mahar and the arbitrator in determining Plaintiff's 207-C benefits. See id. ¶¶ 178-248. Plaintiff seeks monetary relief. Id. ¶ 248.

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the

action is subject to dismissal.  See id. at 678-79.

IV.   **DISCUSSION**

**A. Res Judicata and Collateral Estoppel**

PSP first argues that Plaintiff's claims are barred under the doctrines of res judicata or collateral estoppel.  Dkt. No. 11 ("Memorandum") at 4.  Specifically, PSP asserts that "Plaintiff is attempting to collaterally attack the arbitrator's determination denying him benefits by claiming in the present action, in essence, that Dr. McIntyre's report was either based upon erroneous factual statements or was crafted as part of a 'conspiracy' to thwart Plaintiff's attempt to obtain [] 207-c benefits."  Id.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (citation omitted).  New York follows the transactional analysis approach, which provides that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  O'Brien v. City of Syracuse, 429 N.E.2d 1158, 1159 (N.Y. 1981).  Under the doctrine of collateral estoppel, relitigation of an issue is barred when: "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).

PSP argues that Plaintiff's claims are barred by res judicata because Plaintiff had a full and fair opportunity to litigate his eligibility for benefits before the arbitrator; Plaintiff lost and is now simply trying to "restyle" the action as a conspiracy.  Mem. at 6.  Alternatively, PSP argues that

7

collateral estoppel applies because the issue decided by the arbitrator was whether Plaintiff was entitled to benefits, and Plaintiff is relitigating that same issue, albeit under a different theory. Id. at 7.

Plaintiff responds that his claims are not barred because he is alleging violations of his constitutional rights, and that issue was neither raised, nor could have been raised, before the arbitrator. Dkt. No. 21 ("Response") at 21. In support, Plaintiff cites McDonald v. City of W. Branch, Mich., 466 U.S. 284, 292, (1984), where the Supreme Court held that "in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement."

The Court maintains significant doubt that Plaintiff's claims against PSP are properly brought pursuant to § 1983, and, thus, whether McDonald is applicable to this case. However, in an abundance of caution, and in deference to McDonald, the Court assumes, without deciding, that Plaintiff's claims against PSP are not barred under the doctrines of res judicata or collateral estoppel.

**B. Negligent Misrepresentation**

Under New York law, the elements of a negligent misrepresentation claim are: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citing King v. Crossland Savs. Bank, 111 F.3d 251, 257-58 (2d Cir.

1997)).

PSP argues that Plaintiff has failed to state a claim for negligent misrepresentation because, *inter alia*, Plaintiff did not actually rely on PSP's medical evaluations. Mem. at 8-9. Plaintiff responds that reliance by Sheriff Mahar or the arbitrator is sufficient to support his claim. Resp. at 25. In support, Plaintiff cites Eiseman v. State, 511 N.E.2d 1128, 1135 (1987), where the New York Court of Appeals held that "[l]iability in negligence may of course rest on some form of written misrepresentation or nondisclosure on the part of defendant by which plaintiff or a third party is misled, resulting in injury or damage to plaintiff. The basis of liability is the fact that the misrepresentation or nondisclosure has led the person to whom it was made to forego action that might otherwise have been taken for the protection of the plaintiff." (citing Prosser and Keeton, Torts § 33, at 207 [5th ed]).

Plaintiff is misguided. Eisman arose after a conditionally-released prisoner enrolled in a state college and proceed to murder and rape a college student, and stab a non-student. 511 N.E.2d at 1131-33. An action was brought on behalf of the victims alleging, in relevant part, that the prison doctor negligently failed to advise the college of the prisoner's medical history. Id. at 1132. The issue before the court was whether the doctor owed a duty to the injured students in making his representations to the school. Id. The court acknowledged that a third-party relationship can exist to support a negligent misrepresentation claim, but found that the doctor owed no duty to the students at large. Id. at 1135 (finding that the doctor owed a duty to the college but not to the community at large).

Eisman does not support Plaintiff's argument because, in that case, the court only reached the issue of whether the doctor owed a duty to the victims. See id. PSP has not argued that it lacked

9

a duty to Plaintiff; rather, PSP argues that Plaintiff must allege that *he* actually relied on the representation to state a viable claim. Mem. at 8. Eisman did not reach the issue of actual reliance, and thus is inapplicable.

Moreover, Plaintiff has provided no authority—and the Court is aware of none—that a plaintiff can allege negligent misrepresentation on behalf of another party's reliance. Indeed, Plaintiff's argument is in direct contradiction with Second Circuit and New York case law. See, e.g., Parrott v. Coopers & Lybrand, L.L.P., 741 N.E.2d 506, 509 (2000) (affirming dismissal of plaintiff's negligent misrepresentation claim where plaintiff provided no facts that he relied on defendant's statements); see also Meranus v. Gangel, No. 85 CIV. 9313, 1989 WL 240072, at *3 (S.D.N.Y. Aug. 10, 1989) (noting that where a third-party plaintiff brings an action for negligent misrepresentation, there must still be "reliance by *the plaintiff*") (emphasis added). Accordingly, Plaintiff has failed to state a claim for which relief can be granted against PSP for negligent misrepresentation.

**C. First and Fourteenth Amendment Claims**

Plaintiff brings his claims alleging retaliation under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health, 189 F.3d 273, 280 (2d Cir. 1999) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997)). PSP argues that Plaintiff's claims against it must be dismissed because, *inter alia*, it is not a state actor for purposes of § 1983. Mem. at 11. Plaintiff responds that PSP was acting under color of state law because: (1) PSP was performing a state function, since Plaintiff was required to submit to an exam by PSP in order to

10

receive 207-C benefits; and (2) alternatively, PSP was acting "in concert" with the County Defendants because all Defendants conspired together to deprive Plaintiff of benefits. Resp. at 21-23.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Carlos v. Santos, 123 F.3d 61, 65 (2d Cir. 1997) (quoting, *inter alia*, West 756 v. Atkins, 487 U.S. 42, 49 (1988)) (other citations and internal quotation marks omitted). "A private person—not a government official—acts under color of state law for purposes of § 1983 when 'he has acted together with or has obtained significant aid from state officials' or because his conduct is otherwise chargeable to the state." Barrett v. Harwood, 189 F.3d 297, 304 (2d Cir. 1999) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

Here, it is undisputed that Dr. McIntyre and PSP are private entities. Although PSP was contracted by Sheriff Mahar to perform the IME, "[t]he mere fact that a private actor is paid by state funds, or is hired by a state actor, is insufficient to establish state action." Emanuel v. Griffin, No. 13 CIV. 1806, 2013 WL 5477505, at *5 (S.D.N.Y. Oct. 2, 2013); see also Koltz v. Bezmen, 822 F. Supp. 114, 116-18 (E.D.N.Y. 1993) (finding no state action where a social worker had been requested by the Department of Social Services to conduct tests to determine whether children had been sexually abused).

With respect to Plaintiff's conspiracy claim, the Court notes, that "[p]rivate actors . . . may [] be found liable under a Section 1983 conspiracy theory when the plaintiff demonstrates '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'"

11

Emanuel, 2013 WL 5477505, at *5 (quoting Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002)). However, the Amended Complaint is devoid of any facts supporting the existence of an actual agreement to violate Plaintiff's constitutional rights. Plaintiff's allegations that PSP conspired or acted in concert with the County Defendants are wholly conclusory. Indeed, PSP's only connection to the County Defendants is that it was hired by Sheriff Mahar to perform a psychiatric evaluation of Plaintiff. This allegation does not plausibly suggest the existence of a conspiracy. Accordingly, PSP is not a state actor for purposes of § 1983, and Plaintiff's retaliation claims against PSP pursuant to § 1983 must be dismissed.

**D. New York Civil Service and Labor Law Claims**

Finally, Plaintiff alleges unlawful retaliation against PSP under New York Civil Service Law § 75-b and New York Labor Law § 740. Am. Compl. ¶¶ 243-248. PSP argues that these claims should be dismissed because it is neither Plaintiff's employer, nor a public employer. Mem. at 13. PSP is correct.

Section 740, titled "Retaliatory personnel action by employers," provides that "[a]n employer shall not take any retaliatory personnel action against an employee." N.Y. LAB. LAW § 740. It is undisputed that PSP is not Plaintiff's employer, and thus § 740 is inapplicable. Similarly, § 75-b provides that "[a] public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee." N.Y. CIV. SERV. LAW § 75-b. As PSP is neither Plaintiff's employer, nor a public employer, it cannot be held liable under § 75-b. See id. Accordingly, Plaintiff's claims against PSP for violations under New York Civil Service Law § 75-b and New York Labor Law § 740 are dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the County Defendants' Motion (Dkt. No. 5) to dismiss the original Complaint (Dkt. No. 1) is **DENIED as moot**; and it is further

**ORDERED**, that Defendants Dr. McIntyre and Public Safety Psychology PLLC's First Motion (Dkt. No. 9) to dismiss the original Complaint (Dkt. No. 1) is **DENIED as moot**; and it is further

**ORDERED**, that Defendants Dr. McIntyre and Public Safety Psychology PLLC's Second Motion (Dkt. No. 27) to dismiss the Amended Complaint (Dkt. No. 15) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. All claims against Defendants Dr. McIntyre and Public Safety Psychology PLLC are hereby **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:　　　March 19, 2015
　　　　　　　Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge