UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

JOHN GORMAN,

                          Plaintiff,

            v.                                    Civil Action No. 1:14-cv-434
                                                  (LEK/RFT)
RENSSELAER COUNTY, SHERIFF JACK
MAHAR, ANTHONY PATRICELLI,
UNDERSHERIFF PATRICK RUSSO,
COUNTY HUMAN RESOURCES MANAGER
TOM HENDRY, COUNTY EXECUTIVE
KATHLEEN JIMINO,

                          Defendants.

───────────────────────────────────────


### MEMORANDUM OF LAW IN SUPPORT OF RENSSELAER COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


                                    MARTIN & RAYHILL, PC
                                    *Attorneys for Rensselaer County*
                                    *Defendants*
                                    421 Broad St., #10
                                    Utica, New York 13501
                                    (315) 507-3765
                                    kmartin@martinrayhill.com


Of Counsel:
Kevin G. Martin, Esq.
Bar Roll No. 505332

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**                                                 1

**STATEMENT OF FACTS**                                                    1

**ARGUMENT**

POINT I

PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED          2

POINT II

THE EQUAL PROTECTION CLAIM MUST BE DISMISSED                  10

POINT III

PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES
OF QUALIFIED AND ABSOLUTE IMMUNITY                            11

    A.    Qualified Immunity                                  11
    B.    Absolute Immunity                                   13

POINT IV

NO VALID §1983 CLAIM AGAINST ANY DEFENDANT                    14

    A.    Rensselaer County                                   14
    B.    County Executive Kathleen Jimino                     17
    C.    Director of Human Resources Tom Hendry               17
    D.    Undersheriff Patrick Russo                          18
    E.    Sheriff Mahar                                       18
    F.    Sergeant Patricelli                                 18

POINT V

THE CLAIM FOR EXEMPLARY DAMAGES MUST BE DISMISSED            19

POINT VI

PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL         20

POINT VII

PLAINTIFF'S WHISTLEBLOWER CLAIMS MUST BE DISMISSED                21

POINT VIII

PLAINTIFF'S FAILURE TO EXHAUST REMEDIES AND WAIVER                22

POINT IX

PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE DISMISSED               23


CONCLUSION                                                       25

**TABLE OF AUTHORITIES**

Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999)                                      8

Albright v. Oliver, 510 U.S. 266 (1994)                                         10

Anderson v. Creighton, 483 U.S. 635, 639 (1987)                                 11

Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)                            12

Arteaga v. State of New York, 72 N.Y.2d 212, 216 (1988)                         13

Ashcroft v. Iqbahl, 556 U.S. 662, 676 (2009)                                    16

Bailey v. Pataki, 708 F.3d 391, 404 (2d Cir. 2013)                              11

Barrett v. United States, 798 F.2d 565 (2d Cir. 1986)                           13

Batista v. Rodriquez, 702 F.2d 393 (2d Cir. 1983)                               15

Bolas v. Gray, 775 F.2d 686 (6th Cir.1985)                                       5

Burgos v. Hopkins, 14 F.3d 787, 792 (2d Cir.1994)                               20

Burns v. Cook, 458 F.Supp.2d 29 (N.D.N.Y. 2006)                                  4

Caraccilo v. Vill. of Seneca Falls, 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008)       4

Carnegie v. Miller, 811 F.Supp. 907 (S.D.N.Y. 1993)                             15

Carruso v. Massapequa Union Free School Dist., 478 F.Supp. 377 (E.D.N.Y. 2007)  16

Chase Group Alliance, LLC v. N.Y.C. Dep't of Finance, 620 F.3d 146 (2d Cir. 2010)  1

City of Canton v. Harris, 489 U.S. 378 (1989)                                   15

City of Los Angeles v. Heller, 475 U.S. 796 (1986)                             14

City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)                     19

Cobb v. Pozzi, 363 F.3d 89 (2d Cir. 2004)                                       2, 5

Connick v. Myers, 461 U.S. 138 (1983)                                           6,9

Cox v. Warwick Valley Central School Dist., 654 F.3d 267 (2d Cir. 2011)          3

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2000)          14

Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003)          20

Della Pietra v. State, 71 N.Y.2d 792 (1988)          13

Dorvil v Hilton Hotels Corp., 25 A.D.3d 442 (1st Dep't 2006)          25

Dove v. Fordham University, 56 F. Supp.2d 330 (S.D.N.Y. 1999)          16

Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir.1999)          5

Frisenda v. Village of Malverne, 775 F. Supp.2d 486 (E.D.N.Y. 2011)          10-11

Gallegos v Elite Model Mgmt. Corp., 28 A.D.3d 50 (1st Dep't 2005)          25

Garcetti v. Ceballos, 547 U.S. 410 (2006)          3

Garcia v. Hartford Police Dep't, 706 F.3d 120 (2d Cir. 2013)          3

Gentile v. Nulty, 146 F.Supp.2d 340 (S.D.N.Y. 2001)          20

Green v. City of New York, 465 F.3d 65 (2d Cir. 2006)          15,16

Graham v. Connor, 490 U. S. 386, 395 (1989)          10

Gronowski v. Spencer, 424 F.3d 285 (2d Cir. 2005)          16

Harlow v. Fitzgerald, 457 U.S. 800 (1982)          11

Heil v. Santoro, 147 F.3d 103 (2d Cir. 1998)          9

Jenkins v. City of New York, 478 F3d 76 (2d Cir. 2007)          15

Klug v. Chicago School Reform Bd. of Trustees, 197 F.3d 853 (7th Cir.1999)          5

Lewis v. Cowen, 165 F.3d 154 (2d Cir.1999)          6

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001)          9

Martin v. City of Del City, 179 F.3d 882 (10th Cir.1999)          5

McCullough v. Wyandanch Union Free Sch., 187 F.3d 272 (2d Cir. 1999)          12

Mills v. City of Evansville, 452 F.3d 646 (7th Cir. 2006)          4

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)          11

Mon v. City of New York, 78 N.Y.2d 309, 313 (1991)          13

Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978)          14,15

Moray v. City of Yonkers, 924 F.Supp. 8 (S.D.N.Y. 1996)          15

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)          9

Nagle v. Marron, 663 F.3d 100, 106-07 (2d Cir. 2011)          4,9

Newton v. City of New York, 738 F.Supp.2d 397 (S.D.N.Y. 2010)          12

Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343 (1999)          20

Patel v. Searles, 305 F.3d 130 (2d Cir. 2002)          8

Patrowich v. Chemical Bank, 63 N.Y.2d 541 (1984)          24

Pearson v. Callahan, 555 U.S. 223, 236 (2009)          11

Peave v. KRNH, Inc., 12 A.D.3d 914 (3d Dep't 2004)          21

Pembauer v. City of Cincinnati, 475 U.S. 469 (1986)          14

Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)          2

Pipis v. Nassau County, 34 A.D.3d 664 (2d Dep't 2006)          21

Remba v. Federation Employment and Guidance Serv.,
149 A.D.2d 131 (1st Dep't 1989), aff'd, 76 N.Y.2d 801 (1990)          21

Roberts v. United States Jaycees, 468 U.S. 609 (1984)          7

Robertson v. Sichel, 127 U.S. 507, 515–516 (1888)          16

Ryan v. New York Tel. Co., 62 N.Y.2d 494 (1984)          20

Saucier v. Katz, 533 U.S. 194 (2001)                                              11,12

Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003)                               3

Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010)                                12

Singer v. Ferro, 711 F.3d 334 (2d Cir. 2013)                                      3

Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008)                            3

Skehan v. Village of Mamaroneck, 465 F.3d 96 (2d Cir. 2006)                       16

Smith v. Wade, 461 U.S. 30 (1983)                                                 19

Spencer v. Philemy, 540 F. App'x 69 (2d Cir. 2013)                               3

Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000)                             20

Taveras v. UBS AG, 708 F.3d 436 (2d Cir. 2013)                                    1

Tewksbury v. Ottaway Newspapers, Inc., 192 F.3d 322 (2d Cir. 1999)               25

Toussie v. County of Suffolk, 806 F.Supp.2d 558 (E.D.N.Y. 2011)                  13

Van v. City of New York, 72 F.3d 1040 (2d Cir. 1995)                             15

Velasquez v. City of New York, 960 F. Supp. 776 (S.D.N.Y. 1997)                  15

Velez. v. Levy, 401 F.3d 75 (2d Cir. 2005)                                        12

Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992)                          14

Weintraub v. Bd. of Educ. of City of New York, 593 F.3d 196 (2d Cir. 2010)       4

Williams v. Dallas Indep. School Dist., 480 F.3d 689 (5th Cir. 2007)            4

Williams v. Town of Greenburgh, 535 F.3d 71 (2d Cir. 2008)                       3,9

Williams v. Smith, 781 F.2d 319 (2d Cir. 1986)                                   16

Wilson v. Layne, 526 U.S. 603 (1999)                                             12

Wrobel v. County of Erie, 692 F.3d 22 (2d Cir. 2012)                             3

<u>Wu v. City of New York</u>, 934 F.Supp. 581 (S.D.N.Y. 1996)      16

<u>Young v. County of Fulton</u>, 160 F.3d 899 (2d Cir. 1998)      12

<u>Statutes</u>

28 U.S.C. §1367(c)(3)      25

42 U.S.C. §1983      *passim*

N.Y. Civil Service Law §65 (McKinney's 2013)      23

N.Y. Civil Service law §75(b) (McKinney's 2013)      21,22

N.Y. General Municipal Law Section 207-c (McKinney's 2013)      19

N.Y. Labor Law §740 (McKinneys 2013)      21

## PRELIMINARY STATEMENT

This Memorandum of Law is filed on behalf of Rensselaer County, Sheriff Jack Mahar,

Sergeant Anthony Patricelli, Undersheriff Patrick Russo, County Human Resources Manager

Tom Hendry and County Executive Kathleen Jimino ("the Rensselaer County Defendants") in

support of their motion for summary judgment.  In a FRCP 56 motion, the movant must show

there is no genuine dispute as to any material fact.  In this case, the undisputed facts show that

the Second Amended Complaint should be dismissed on the following grounds: 1) the alleged

First Amendment conduct does not touch on matters of public concern and the statements made

were not made as a citizen; 2) there was no chilling effect and no material adverse employment

action; 3) even if there was a deprivation of a constitutional right, the Rensselaer County Defen-

dants are entitled to qualified immunity, and in the case of Sheriff Mahar and Defendant Hendry

absolute immunity; 4) the allegations against County Executive Jimino, Sheriff Mahar, Undersh-

eriff Russo and Human Resources Manager Tom Hendry are insufficient as a matter of law; 5)

the claim for equal protection under the Fourteenth Amendment is insufficient as a matter of law;

6) the claim for punitive damages against the County Defendants in their official capacities is

barred as a matter of law, 7) Plaintiff has failed to exhaust remedies and/or waived his claims, 8)

Plaintiff's claims under the Americans With Disabilities Act are untimely and insufficient, and 9)

the individual Rensselaer County Defendants are not "employers' under the New York Executive

Law and are not liable as a matter of law.

## STATEMENT OF FACTS

The undisputed material facts are set forth in more detail in the Rule 7.1(f) statement.

Essentially, Plaintiff Gorman's sister decided to end her live-in relationship with Defendant An-

thony Patricelli.  Complaint at ¶16, 19.  Defendant Patricelli and Plaintiff Gorman both worked

at the Rensselaer County jail, but they worked different days and shifts and Gorman was not in

Patricelli's direct chain of command.  See id. at ¶10.  Plaintiff alleges that Patricelli was upset

with him after the break up, and that there was a subsequent conspiracy among numerous County

employees to interfere with his employment at the jail.  He also alleges that the County Defen-

dants retaliated against him for filing work place discrimination complaints and criminal com-

plaints against Sergeant Patricelli that arose out of the break up with Gorman's sister.  As ex-

plained in the accompanying affidavits, it is undisputed there was no such conspiracy.  It is also

undisputed that Plaintiff was never disciplined in any way.  He left employment due to illness at

a time when Sergeant Patricelli hadn't even been working at the County jail for over a month.

There simply was no adverse employment action taken against him in this case.

## ARGUMENT

## POINT I

## PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED

Plaintiff's first six causes of action are all predicated upon alleged violations of his First

Amendment rights of free speech and association, and upon alleged retaliation for protected

speech and association.  Second Amended Complaint at ¶191-236.  However, nothing that Plain-

tiff has said is protected speech, and his relationship with his sister is not a protected association.

Public employees retain First Amendment rights during their government employment.  Cobb v.

Pozzi, 363 F.3d 89, 101 (2d Cir. 2004) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568

(1968)).  The First Amendment guarantees the rights of free speech and peaceful assembly; how-

ever, not all speech or associations of a public employee support a Section 1983 claim.  Wrobel

v. County of Erie, 692 F.3d 22, 27 (2d Cir. 2012).  In order to prove a First Amendment retalia-

tion claim, Plaintiff must demonstrate: 1) that the speech or conduct at issue is protected under

the First Amendment; 2) that the defendants took adverse action against him; 3) that there was a

causal connection between plaintiff's protected speech or conduct and the adverse action; and 4)

that the defendants' action effectively chilled the exercise of a plaintiff's First Amendment right

or some other adverse action.  See Cox v. Warwick Valley Central School Dist., 654 F.3d 267,

272 (2d Cir. 2011); Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008); Singh v.

City of New York, 524 F.3d 361, 372 (2d Cir. 2008) (police officer's complaints about violation

of Civil Service Law §65 not a matter of public concern); Scott v. Coughlin, 344 F.3d 282, 287

(2d Cir. 2003) (first three elements of retaliation claim).  The Second Circuit has reiterated that

the First Amendment protects a public employee from retaliation by his or her employer for the

employee's speech "only if 'the employee sp[eaks] [1] as a citizen [2] on a matter of public con-

cern.'" Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013) (alteration in original) (quoting Garcetti

v. Ceballos, 547 U.S. 410, 418 (2006)).  See also Garcia v. Hartford Police Dep't, 706 F.3d 120,

129-30 (2d Cir. 2013) (plaintiff must show that the speech at issue was made as a citizen on mat-

ters of public concern rather than as an employee on matters of personal interest); Spencer v.

Philemy, 540 F. App'x 69, 70 (2d Cir. 2013).  Whether an employee's associations and speech

address matters of public concern is a question of law for the court.  Garcia, 706 F.3d at 130 (cit-

ing Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999)).

    In Garcetti v. Ceballos, the United States Supreme Court clarified the threshold inquiry

for a First Amendment retaliation claim in the public employment context.  To determine

whether the speech at issue is constitutionally protected, the court must first decide whether the

plaintiff was speaking as a "citizen," rather than as a public employee.  Garcetti, 547 U.S. at 421.

"If the answer is 'no,' then no First Amendment claim arises, and that ends the matter." Caraccilo

v. Vill. of Seneca Falls, 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008).  By expressly holding that

speech pursuant to a public employee's official duties is not insulated from employer discipline,

Garcetti emphasized the dual nature of the threshold inquiry into the status of speech; it first di-

rects a court's attention to the role that the speaker occupied, requiring that "before asking

whether the subject-matter of particular speech is a topic of public concern, the court must decide

whether the plaintiff was speaking 'as a citizen' or as part of [his] public job." Mills v. City of

Evansville, 452 F.3d 646, 647 (7th Cir. 2006).  See also, Nagle v. Marron, 663 F.3d 100, 106-07

(2d Cir. 2011) ("[plaintiff] speaks as an employee and not as a citizen if the speech is 'part and

parcel of his concerns' about his ability to properly execute his duties.") (citing Weintraub v. Bd.

of Educ. of City of New York, 593 F.3d 196, 203 (2d Cir. 2010) (quoting Williams v. Dallas In-

dep. School Dist., 480 F.3d 689, 694 (5th Cir. 2007).

 In this case, Plaintiff was not speaking "as a citizen".  All of his causes of action are

based upon his use of various avenues he used to try for him to improve his personal working

conditions.  He also filed criminal complaints against Patricelli regarding conduct wholly outside

of the workplace.  None of the workforce violence complaints or criminal complaints that form

the basis for Plaintiff's First Amendment causes of action, nor his associational claim regarding

his sister, touch on a matter of public concern.  All of his causes of action stem from an alleged

personal dispute with Sergeant Patricelli unrelated to his work situation.  In a similar case, Burns

v. Cook, 458 F.Supp.2d 29 (N.D.N.Y. 2006), Judge Hurd found that workplace complaints were

not protected:

Even a cursory examination of the content, form, and context of this speech, as well as plaintiff's apparent motivation for engaging in it, clearly indicates that it is not related to a matter of public concern. The content of her speech relates to her position with the District, benefits she was allegedly owed, and the alleged release of her medical information—all matters of personal interest. Plaintiff communicated this speech in a private and direct manner with no apparent intention of voicing her discontent to the public at large. Moreover, there is nothing in the complaint which indicates that plaintiff was motivated by anything other than her own personal interests. The fact that her speech concerned statutory and contractual rights, benefit entitlements, and medical privacy rights presumably enjoyed by other District employees is not enough to make it a matter of public concern. Plaintiff was not speaking as an advocate for District employee rights, or even as a concerned citizen; rather, she sought to redress personal employment grievances.

The Second Circuit has held that the "public concern" requirement applies to associational conduct as well as speech. Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004). In Cobb, supra, the plaintiffs were corrections officers who worked for Westchester County, and the Second Circuit was presented with a First Amendment retaliation claim based on freedom of association. The Cobb plaintiffs claimed they were terminated from employment because of their membership in a union. Cobb, 363 F.3d at 92-93. The Second Circuit joined the Fourth, Sixth, Seventh and Tenth circuits, and held that a public employee bringing a First Amendment freedom of association claim must prove that the associational conduct at issue touches on a matter of public concern. Id. at 103 (citing Klug v. Chicago School Reform Bd. of Trustees, 197 F.3d 853, 857 (7th Cir.1999); Edwards v. City of Goldsboro, 178 F.3d 231, 249-50 (4th Cir.1999) ("[l]ogically, the limitations on a public employee's right to associate are `closely analogous' to the limitations on his right to speak"); Bolas v. Gray, 775 F.2d 686, 692 (6th Cir.1985) ("We perceive no logical reason for differentiating between speech and association in applying Connick to first amendment claims, and hold that it is so applicable."); Martin v. City of Del City, 179 F.3d 882, 888 (10th Cir.1999). In Cobb, the Second Circuit found that even assuming union membership was

protected association, the plaintiffs were terminated for refusing to work overtime, which was not a matter of public concern.  Cobb, 363 F.3d at 108.

In Connick v. Myers, 461 U.S. 138 (1983), an assistant prosecutor was dismissed for her part in a "mini-insurrection" in the district attorney's office.  Connick, 461 U.S. at 140-41.  Upset by a decision to transfer her to a different office, the plaintiff distributed a questionnaire soliciting her co-workers' views on issues such as the need for a grievance committee, office transfer policy and whether or not co-workers felt pressure to work on political campaigns.  See id. at 141.  The plaintiff was dismissed for her refusal to accept a transfer.  See id.  Following her dismissal, the plaintiff filed suit under Section 1983, contending that she had been terminated in retaliation for exercising her right to free speech.  Id.  The Supreme Court found that the plaintiff had articulated personal work place grievances that were matters that did not touch a public concern.  The Supreme Court observed that where the employee speech at issue does not touch on a matter of public concern, district courts need not scrutinize the reason for the adverse employment action because "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  Id. at 146.

In this case, it is undisputed that none of the speech at issue touches on a public concern. Plaintiff has alleged that an argument between his sister and Defendant Patricelli resulted in him receiving two phone calls he perceived as threatening and being stared at during work.  When he complained about it though his workplace violence complaints, he was unsatisfied with the pace and outcome of the investigation.  Plaintiff's complaints about the harassment he was getting at

work from Patricelli and others is simply not a matter of public concern and do not raise any

First Amendment protections.

Similarly, Plaintiff's First Amendment claims based upon interference with his relation-

ship with his sister also do not touch on a matter of public concern, and such a relationship is not

protected in the circumstances of this case.  It is exactly the kind of personal association that the

courts have uniformly found <u>not</u> to be actionable under the First Amendment.  In <u>Roberts v.</u>

<u>United States Jaycees</u>, 468 U.S. 609, 617-18 (1984), the Minneapolis and St. Paul Jaycees local

chapters began admitting women as members.  The Jaycees' national organization threatened to

revoke their charters because the Jaycees' promoted the "growth and development of young

men's civic organizations . . .," and its by-laws limited membership to men.  The Supreme Court

held that the Jaycees was a "public accommodation" that could not discriminate against women.

The issue in <u>Roberts</u> was whether the Minnesota Human Rights Law resulted in an undue in-

fringement of the right to remain a male only organization.  Although sibling relationships are

not mentioned in <u>Roberts</u> and play absolutely no part in the reasoning of the case, the Court, in

dicta, suggests that the Constitution protects "certain kinds of highly personal relationships"

from undue governmental intrusion.  Id. at 618-19.  The Court specifically mentions that the

Constitution "imposes constraints on the State's power to control the selection of one's spouse."

Id. at 619.  However, the Court points out the Minnesota Human Rights Law did not "burden"

the male Jaycees' First Amendment rights since the Jaycees could still lobby the government, and

engage in political, economic and cultural affairs.  That is also the case here.  Plaintiff does not

allege, nor could he, that his relationship with his sister has been "burdened" in any way.  He is

absolutely free to associate with his sister, and there has been no interference with his relation-

ship with her.  It is respectfully submitted that federal courts should not mediate disputes arising from the question of whether or not someone's sister should date a co-worker.

In Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999), the plaintiff alleged he was fired because of his wife's lawsuit against the State of New York.  The Second Circuit pointed out that even the protection for the husband-wife relationship "is far from clear" and the source of the right of intimate relationships has never been determined, citing the dicta in Roberts v. United States Jaycees, supra.  In fact, in Adler, the Second Circuit pointed out that the source for the protections for husband and wife "the most fundamental of intimate relationships" are rooted not in the First Amendment but in the Due Process Clause of the Fourteenth Amendment stating "the opinions considering claims that a right to marry was impaired or at least burdened have not referred to the First Amendment."  Id. at 43.  Though the matter was not clear and was not "free from doubt" the Second Circuit held that a retaliatory discharge based solely on litigation instated by one's *spouse* is actionable under the First Amendment."  Id. at 45.  See also Patel v. Searles, 305 F.3d 130 (2d Cir. 2002) (plaintiffs must show a "substantial impairment" of an intimate relationship).  In this case, it is undisputed that Plaintiff's relationship with his sister was not impacted in any way.  In this case, it is not a husband-wife relationship, and there was no retaliatory discharge.  Accordingly, Plaintiff's first six causes of action regarding infringement and retaliation arising out of his speech and associational rights with his sister should be dismissed as they are all based upon personal, not public, matters.

Plaintiff may argue that when he reported the fact that Patricelli had committed a crime by accessing the e-Justice system that was protected speech.  However, the Second Circuit has held that a report of forgery did not touch on a matter of public concern and, "[n]o authority sup-

ports [the] argument that reporting an alleged crime always implicates matters of public concern." <u>Nagle v. Marron</u>, 663 F.3d 100, 107 (2d Cir. 2011).  Moreover, the report of Patricelli's accessing of the e-Justice system occurred in late May, Patricelli was suspended from work in mid-June, and Plaintiff was out of work by July 14.  Even if the report of Patricelli's crime was protected speech, it was not causally connected to any adverse employment action, and none is alleged in this case.  Patricelli had no input on any employment decisions relating to Plaintiff Gorman.

The First Amendment retaliation claims in this case should also be dismissed because Plaintiff cannot show that his actions have been chilled or that he has suffered a materially adverse employment action.  <u>See</u>, <u>e.g.</u>, <u>Locurto v. Safir</u>, 264 F.3d 154, 158 (2d Cir. 2001) (termination of employment); <u>Heil v. Santoro</u>, 147 F.3d 103, 105 (2d Cir. 1998) (10–day suspension without pay).  In this case, Plaintiff alleges that there was ongoing harassment by various individual employees of the County.  In <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999), which involved claims under §1983, the Second Circuit affirmed dismissal of the complaint stating that "Morris does not allege that the transfer here involved any change in job description, days and hours, duties, benefits, or opportunity for promotion. It follows that the transfer was not an adverse employment action." <u>Morris</u>, 196 F.3d at 113.  In this case, no adverse employment action was taken against Plaintiff by the County and he is still an employee out on medical leave.  The injuries that led to Plaintiff being out of work have been found by the arbitrator in the General Municipal Law 207-c hearing to be unrelated to his work.

Defendants' actions have not chilled Plaintiff's conduct as Plaintiff has not been prevented from associating with his sister or speaking out.  <u>See Williams v. Town of Greenburgh</u>, 535 F.3d

71, 79 (2d Cir. 2008); Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (to state a

claim of retaliation, First Amendment right must be "actually chilled").  The Complaint alleges

just the opposite.  Plaintiff has sued everyone, in multiple forums, and there has been no chilling

effect on his free speech rights whatsoever.  In his Complaint, Plaintiff states that he has brought

multiple workplace violence complaints, a complaint with the New York State Department of

Labor, New York Public Employee Relations Board, a General Municipal Law §207-c claim, and

a grievance under the collective bargaining agreement.  Finally, Plaintiff has not alleged that his

relationship with his sister has been affected in any way nor could he.  As a result, all of his First

Amendment claims must be dismissed as a matter of law for failure to allege any chilling effect

or any other adverse employment action.

## POINT II

### THE EQUAL PROTECTION CLAIM MUST BE DISMISSED

Plaintiff's Seventh Cause of Action alleges violation of the Fourteenth Amendment and

repeats and realleges all of the prior allegations in the Complaint.  There is no possible claim

Plaintiff could make based upon the Fourteenth Amendment.  As the Supreme Court held in Al-

bright v. Oliver, 510 U.S. 266 (1994), where a particular statute or amendment "provides an ex-

plicit textual source of constitutional protection" against a particular sort of government behav-

ior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the

guide for analyzing" such a claim. Albright, at 273 (citing Graham v. Connor, 490 U. S. 386, 395

(1989).  In this case, Plaintiff bases his Fourteenth Amendment claim on his various complaints

regarding the treatment he received from Patricelli.  All of those claims are First Amendment re-

taliation claims and the Fourteenth Amendment claim is entirely duplicative.  See Frisenda v.

Village of Malverne, 775 F. Supp.2d 486 (E.D.N.Y. 2011).  Moreover, Plaintiff makes no allega-

tion that there were other similarly situated employees who were treated differently than him.

Accordingly, the Seventh Cause of Action for equal protection must be dismissed.

### POINT III

### PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF QUALIFIED AND ABSOLUTE IMMUNITY

A.    Qualified Immunity.

The County Defendants are entitled to qualified immunity where they can establish either

that (1) 'a constitutional right was [not] violated' or (2) 'the right was [not] clearly established.'"

Bailey v. Pataki, 708 F.3d 391, 404 (2d Cir. 2013) (alterations in original) (quoting Saucier v.

Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds, Pearson v. Callahan, 555

U.S. 223, 236 (2009)).  Qualified immunity protects public officials performing discretionary

functions from personal liability in a civil suit for damages "insofar as their conduct does not vi-

olate clearly established statutory or constitutional rights of which a reasonable person would

have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[W]hether an official protected

by qualified immunity may be held personally liable for an allegedly unlawful official action

generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal

rules that were 'clearly established' at the time it was taken.  Anderson v. Creighton, 483 U.S.

635, 639 (1987) (citing Harlow, 457 U.S. at 818-19).  Qualified immunity protects public ser-

vants from having to stand trial or face the other burdens of litigation.  Saucier v. Katz, 533 U.S.

194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

The relevant, dispositive inquiry in determining whether a right is "clearly established" is whether it would be clear to a reasonable public employee that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").  "Clearly established" means that "1) the law is defined with reasonable clarity, 2) the Supreme Court or the Second Circuit has recognized the right, and 3) `a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful'".  Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)). Ultimately, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Velez. v. Levy, 401 F.3d 75 (2d Cir. 2005) (quoting McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir. 1999)).  'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal.'" Newton v. City of New York, 738 F.Supp.2d 397 (S.D.N.Y. 2010) (quoting Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010)).

In this case, even assuming that an adverse employment action has taken place, research shows no case law that would "clearly establish" that Plaintiff's statements regarding alleged harassment arising out of his sister's decision to leave Patricelli were protected by the First Amendment, or that the actions or inactions that are alleged here violate Plaintiff's constitutionally-protected rights.  Accordingly, it was not clearly established that Plaintiff's complaints would entitle him to any First Amendment protection and all of the County Defendants are pro-

tected by qualified immunity.  See Toussie v. County of Suffolk, 806 F.Supp.2d 558 (E.D.N.Y.

2011) (court dismissed First Amendment claim based upon parent-child relationship on grounds

of qualified immunity).

B.      Absolute Immunity.

       Sheriff Mahar and Human Resources director Hendry are entitled not just to qualified im-

munity, but also to absolute immunity.  Sheriff Mahar's decisions regarding Plaintiff's civil ser-

vice status is entitled to absolute immunity on the ground that the decision was made in his ca-

pacity as head of the Sheriff's Department and as a part of his administration of the Civil Service

Law.  See Mon v. City of New York, 78 N.Y.2d 309, 313 (1991) (discretionary functions are enti-

tled to immunity); cf., Barrett v. United States, 798 F.2d 565, 572–73 (2d Cir. 1986) (extensive

discussion of scope of immunity).  New York law recognizes absolute immunity with respect to

the performance of discretionary functions that are quasi judicial.  See, e.g., Arteaga v. State of

New York, 72 N.Y.2d 212, 216 (1988); Della Pietra v. State, 71 N.Y.2d 792, 796 (1988).  In this

case, Sheriff Mahar may choose among the top scoring individuals on a civil service eligibility

list.  In this case, Plaintiff wasn't even eligible because he was not among the top three scores on

the competitive examination.  In addition, New York's Civil Service Law requires that Plaintiff's

provisional appointment end when a competitive test has been taken and an eligibility list creat-

ed.  Sheriff Mahar's administration of the Civil Service Law was entirely correct and he is enti-

tled to immunity.  Plaintiff has remedies under the New York Civil Service Law itself which he

has failed to pursue.

       Similarly, Mr. Hendry's decision to find that Plaintiff's workplace violence complaints as

unfounded is a discretionary function that is quasi judicial and entitled to protection.

## POINT IV

## NO VALID §1983 CLAIM AGAINST ANY DEFENDANT

A.    <u>Rensselaer County</u>.

Counties are subject to suit under §1983, but are not liable on a *respondent superior* theory.  <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691 (1978).  Under §1983 acts of the municipality are distinguishable from the acts of employees of the municipality, and liability is only possible where the municipality is actually responsible.  <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986).  The County in this case can only be responsible for its own official policies or customs.  <u>Monell</u>, 436 U.S. at 694.  To the extent that Plaintiff alleges that Rensselaer County denied him any First Amendment rights, he must allege that some official policy is at fault.  It is well-settled that a claim of constitutional violation lies against a municipality only where there is a finding of a constitutional violation by one of its officers.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 71 (2d Cir. 2000) (citing cases).  As we have demonstrated above, there has been no such showing.  Even if there was a constitutional deprivation, Plaintiff must also allege the existence of (1) a formal policy officially endorsed by the municipality, <u>Monell</u>, 436 U.S. at 690; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; <u>Walker v. City of New York</u>, 974 F.2d 293, 296 (2d Cir. 1992); (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials, <u>Monell</u>, 436 U.S. at 91; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal em-

ployees.  City of Canton v. Harris, 489 U.S. 378, 388 (1989); Moray v. City of Yonkers, 924 F.-
Supp. 8, 12 (S.D.N.Y. 1996).  There must also be a causal link between the policy, custom or
practice and the alleged injury in order to find liability against a municipality.  Batista v. Ro-
driquez, 702 F.2d 393, 397 (2d Cir. 1983).  Evidence of an unconstitutional action by an individ-
ual employee, on its own, will not be enough to prove that any inadequacy was a result of a mu-
nicipality's deliberate indifference.  Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)
(there must be a showing of deliberate indifference to a member of the public's rights); Carnegie
v. Miller, 811 F. Supp. 907, 911 (S.D.N.Y. 1993).  In this case, Plaintiff has not alleged and can-
not show any County policy or practice affecting him that would constitute a violation of his
constitutional rights.

Deliberate indifference may be inferred from proof of repeated complaints of *constitu-
tional violations* that are followed by a failure on the part of the municipality to investigate.  Ve-
lasquez v. City of New York, 960 F. Supp. 776, 783 (S.D.N.Y. 1997) (quoting Van v. City of New
York, 72 F.3d 1040, 1049 (2d Cir. 1995)).  In this case, there were never any such prior com-
plaints of any constitutional violations.  Moreover, when Plaintiff complained, investigations
were done, although the outcome was not to Plaintiff's liking.  All of the Plaintiff's complaints
stemmed from a personal dispute between Patricelli and Plaintiff, in which Plaintiff claimed
Patricelli was looking at him and monitoring him at work.  Moreover, liability will not attach un-
less Plaintiff identifies a specific deficiency in supervision that "actually caused the constitution-
al deprivation."  Green v. City of New York, 465 F.3d at 81 (citation omitted); Jenkins v. City of
New York, 478 F3d 76, 95 (2d Cir. 2007).  In this case there has been no such allegation nor
could there be as Plaintiff's complaints were not about any constitutional violation and they were

concededly investigated.  There is simply no proof of "widespread and consistent" *constitutional violations* that would give rise to a *de facto* policy and no allegation of any such conduct in the Complaint.

Even assuming there is a constitutional violation in this case, the claims under 42 U.S.C. §1983 against Jimino, Mahar, Russo and Hendry must be dismissed because the allegations against them do not show personal involvement or malice.  See Wu v. City of New York, 934 F.-Supp. 581, 591-92 (S.D.N.Y. 1996).  Under Section 1983, only a defendant who "personally 'subjects, or causes to be subjected' any person to the deprivation of any federal right will be held liable.  Carruso v. Massapequa Union Free School Dist., 478 F.Supp.2d 377 (E.D.N.Y. 2007) (citing Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006)); Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005).  Personal involvement of a defendant in alleged constitutional deprivations "is a prerequisite to an award of damages under §1983."  Dove v. Fordham University, 56 F. Supp.2d 330, 336 (S.D.N.Y. 1999) (quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)).  For this reason, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  Robertson v. Sichel, 127 U.S. 507, 515–516 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to §1983, Plaintiff must plead that each defendant, through his or her own individual actions, has violated the Constitution.  Ashcroft v. Iqbahl, 556 U.S. 662, 676 (2009).  Knowledge and quiescence on the part of a supervisor cannot form the basis of liability.  Id. at 677.

In this case, Plaintiff's allegations fall far short of alleging any constitutional deprivation on the part of the individual Defendants.  All of the actions at issue begin with Patricelli's conduct, and all of the workplace violence complaints center around Patricelli.  There are insufficient allegations against the individual County Defendants as they were not personally involved in any of the harassment or in any constitutional deprivation.

B.    <u>County Executive Kathleen Jimino.</u>

County Executive Jimino never spoke with Plaintiff and had no involvement in any of the employment decisions relating to Plaintiff.  Affidavit of Kathleen Jimino dated August 27, 2016 at ¶  .  ("Jimino Aff.").  The Second Amended Complaint mentions the County Executive six times.  Plaintiff alleges that he unsuccessfully tried to make an appointment with her.  <u>Id</u>. at ¶40.  Plaintiff alleges that he wrote to and called Jimino but did not receive a reply to the letter or a call back directly from Jimino.  <u>Id</u>. at ¶44.  However, Defendant Hendry and Assistant County Executive Chris Meyer later called Plaintiff on behalf of Ms. Jimino in response to his attempts to contact her.  <u>Id</u>. at ¶43, 46.  The only other allegation against Ms. Jimino is that her office has not replied to the second workplace violence complaint, which was filed with Defendant Hendry after he had left employment on July 14, 2013.  <u>Id</u>. at ¶59, 70.  The undisputed facts show that she had no personal involvement in any of the issues raised in the Second Amended Complaint.

C.    <u>Director of Human Resources Tom Hendry.</u>

Defendant Hendry's only connection with Plaintiff is that he investigated the work place violence complaints.  <u>Id</u>. at ¶32.  Plaintiff was unsatisfied with Mr. Hendry's response to the workplace violence complaints., in which Hendry determined the complaints were unfounded.  <u>Id</u>. at ¶¶50, 52, 55, 65.  There are no other allegations against Hendry nor could there be as

Hendry was not involved in any  that could be construed of deprivation of a constitutional right.

Accordingly, the allegations of the Complaint fail to state a cause of action against Defendant

Hendry.

      D.    <u>Undersheriff Patrick Russo</u>.

Plaintiff alleges that Defendant Undersheriff Pat Russo was impeding the investigation

into his workplace violence complaints and 207-c application.  <u>Id</u>. at ¶50-51, 61.  On June 5,

2013, Plaintiff had a meeting with Undersheriff Russo who denied any knowledge of the harass-

ment that Plaintiff had experienced.  <u>Id</u>. at ¶51.  Russo is not mentioned otherwise.

      E.    <u>Sheriff Mahar.</u>

The allegations against Sherrif Mahar are that he asked Plaintiff to give false testimony

about Chief Vibert, Took Plaintiff off the provisional Sergeant list, and instigated another em-

ployee to harass him.  These allegations fall far short of demonstrating any constitutional depri-

vation.

      E.    <u>Sergeant Patricelli</u>.

In this case, there is no state law causes of action for harassment brought against Patricel-

li.  Plaintiff's claims are based solely upon his claim that Patricelli scrutinized him at work, or

had others do it, and called Plaintiff at home or when he was off duty on the phone a few times.

Even assuming the truth of all of these allegations, they are not sufficient to create any *constitu-*

*tional* claim against Patricelli.  This was a purely private dispute and Patricelli was not acting in

furtherance of his duties or under color of state law when he called Plaintiff.  <u>See</u> <u>Stavitz v. City</u>

<u>of New York</u>, 98 A.D.2d 529 (1st Dep't 1984) (a matter wholly personal in nature cannot be said

to fall within scope of employment).  These are simply not constitutional matters.  In fact, in the

207-c hearing, the arbitrator has found that the alleged harassing conduct that caused the Plaintiff's alleged injuries were not work related.  Accordingly, the First Amendment claims against Patricelli must be dismissed as a matter of law.

## POINT V

### THE CLAIM FOR EXEMPLARY DAMAGES MUST BE DISMISSED

Exemplary damages are not authorized against a public entity or a public employee acting with the scope of his employment.  See Smith v. Wayne, 461 U.S. 30 (1983); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (municipality is immune from punitive damages under §1983).  Accordingly, the County and all of the individual Defendants cannot be subject to a claim for punitive damages in their official capacities.  To recover punitive damages agains the individuals in their personal capacities, Plaintiff must allege Defendants' conduct was motivated by an evil motive or intent, or involved reckless or callous indifference to Plaintiff's federal constitutional rights.  Smith v. Wade, 461 U.S. 30, 56 (1983).  Plaintiff has not made any such allegation with respect to any of the County Defendants and there is no such proof.  Plaintiff's allegations with respect to Patricelli's phone calls relate to matters outside of work.  None of the allegations against Patricelli relate to retaliation for Plaintiff's exercise *of his constitutional rights*.  At best it was retaliation for Plaintiff informing his sister of Patricelli's infidelity.

## POINT VI

### PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Plaintiff alleges that he filed a New York General Municipal Law §207-c claim but was denied benefits.  Section 207-c provides benefits for corrections officers injured "in the performance of his duties or who is taken sick as a result of the performance of his duties."  N.Y. Gen-

eral Municipal Law Section 207-c (McKinney's 2013).  Section 207-c specifically provides that

benefits are not available unless "a determination has first been made that such injury or sickness

was incurred during, or resulted from, such performance of duty."  Id.  See Gentile v. Nulty, 146

F.Supp.2d 340 (S.D.N.Y. 2001) (psychological care is covered by 207-c, which is to be liberally

construed in favor of corrections officers).

Under New York law, collateral estoppel "precludes a party from relitigating in a subse-

quent action or proceeding an issue clearly raised in a prior action or proceeding and decided

against that party or those in privity, whether or not the tribunals or causes of action are the

same." Burgos v. Hopkins, 14 F.3d 787, 792 (2d Cir.1994) (quoting Ryan v. New York Tel. Co.,

62 N.Y.2d 494, 500 (1984)).  Courts invoke the doctrine of collateral estoppel "if the issue in the

second action is identical to an issue which was raised, necessarily decided and material in the

first action, and the [party against whom preclusion is sought] had a full and fair opportunity to

litigate the issue in the earlier action."  Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349

(1999) (citation omitted).  Also, the issue raised in the first action must be "decisive" of the sec-

ond action. See Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (citing cases). The

burden of showing that an issue raised in a subsequent proceeding "is identical to one that was

raised and necessarily decided in the prior action rests squarely on the party moving for preclu-

sion." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).

It was incumbent upon Plaintiff to prove, by a preponderance of the evidence, that the

injury that he claims occurred in the work place in the performance of his duties.  That issue was

the sole issue in the arbitration hearing.  Plaintiff admits that he lost that issue, although he

blames Dr. McIntyre's independent medical examination for it.  Complaint at ¶125-139.  Howev-

er, as the finding went against him, Plaintiff is barred by collateral estoppel from relitigating the issue of whether his injuries are work related here.

## POINT VII

## PLAINTIFF'S WHISTLEBLOWER CLAIMS MUST BE DISMISSED

Under New York Labor Law §740, public employers cannot retaliate against employees who disclose or threaten to disclose activities, policies or practices that violate laws or regulations which present a "substantial and specific danger *to the public health or safety* or which constitute health care fraud" (emphasis supplied).  Under Labor Law §740, a plaintiff must show that he was discharged in retaliation for disclosing a practice of his employer that constituted an actual violation of law that created a specific danger to the public health.  Absent such a showing, dismissal of the claim is warranted.  Remba v. Federation Employment and Guidance Serv., 149 A.D.2d 131 (1st Dep't 1989), aff'd, 76 N.Y.2d 801 (1990); Pipis v. Nassau County, 34 A.D. 3d 664 (2d Dep't 2006).  In this case, there is no public health danger whatsoever.  Where a complaint concerns danger only to an individual, it fails to meet the requirements for liability under Labor Law §740.  See, e.g., Peave v. KRNH, Inc., 12 A.D.3d 914 (3d Dep't 2004).

Similarly, Plaintiff's claim under New York Civil Service Law Section 75b(2)(a) must be dismissed.  That section provides:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official

duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

To state a claim under §75-b, Plaintiff must allege: (1) an adverse <u>personnel</u> action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which he reasonably believes to be true and which she reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action.  Section 75-b defines a "personnel action" as "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." N.Y. Civ. Serv. Law § 75-b(1)(d).

In this case, there was no adverse personnel action and no threat to public health.  Plaintiff left employment due to illness and was terminated in accordance with the Civil Service Law after being out of work for one year.  There was no violation of any law, rule or regulation that endangered the public health or safety.  Accordingly, the claims in the Eighth Cause of Action under Labor Law §740 and Civl Service Law §75-b must be dismissed.

## POINT VIII

## PLAINTIFF'S CLAIMS ARE BARRED FOR FAILURE TO EXHAUST REMEDIES OR WAIVER

Many of Plaintiff's allegations in support of his claims pertain to matters for which there are currently, or could have been, actions or grievances in other forums. For example, Plaintiff complains that Sheriff Mahar removed him from a position as a "provisional Sergeant " due to his low score on the competitive civil service test.  Complaint at ¶28.  Under New York's Civil Service Law, a provisional appointment is only appropriate until a competitive examination oc-

curs and an "eligible list" is created.  N.Y. Civil Service Law §65 (McKinney's 2013).  In this case, Plaintiff's score was too low to allow Sheriff Mahar to consider him for a position.  It is important to note that the eligible list is certified <u>not</u> by Sheriff Mahar but by the local civil service commission.  If there is any question regarding Plaintiff's score or position on the eligible list, Plaintiff can file an Article 78 Petition against the local commission to review whether he was reachable. He did not do so and has accordingly waived any claim regarding his provisional appointment.

Plaintiff also claims that he was denied bidding rights and accrual leave time.  See, e.g. Complaint at ¶142.  However, Plaintiff also admits that the terms and conditions of his employment are governed by a collective bargaining agreement and he is represented by a union. <u>See</u>, <u>e.g.</u>, Complaint at ¶58, 60.  In fact, the union filed a demand for arbitration regarding the 207-c benefits he claimed and the arbitrator ruled against him.  <u>Id</u>. at ¶61.  Under these circumstances, Plaintiff's allegations regarding his accruals, bidding rights and civil service status are all resolvable in other forums, and it appears that many of these matters are pending or have been decided against him.  Accordingly, this Court should dismiss all of the Causes of Action based upon the Plaintiff's allegations that he was denied accrual of benefits, bidding rights, and civil service status.

**POINT IX**

**PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE DISMISSED**

Plaintiff filed an administrative charge of disability discrimination with the EEOC under the Americans with Disabilities Act ("ADA") on May 28, 2015.  Complaint at ¶187.  He had three hundred (300) days following the adverse employment action in this case to file his claim

with the EEOC, and one year to file an administrative claim with the New York State Division of Human Rights.  The EEOC and Division of Human Rights have a work sharing agreement where each agency handles administrative complaints for each other.  See Tewksbury v. Ottaway Newspapers, Inc., 192 F.3d 322 (2d Cir. 1999).  The EEOC determined that the last possible accrual was June 24, 2014, so Plaintiff had until May 18, 2015 to file an administrative action for disability discrimination.  He failed to do so and his claims under the Americans with Disabilities Act must be dismissed.  The Division of Human Rights normally adopts the findings of the EEOC (and vice versa), and Plaintiff's recourse under New York's Executive Law for an adverse administrative determination is an Article 78 proceeding in New York's Supreme Court.

In addition to being untimely, Plaintiff is not a qualified individual with a disability.  In order to be a qualified individual with a disability Plaintiff must be able to perform the "essential functions" of the job.  In this case, Plaintiff is not able to perform the essential functions of the job as his doctor has not released him to return to work.  If he is released to return by competent medical proof, he may request to return to employment under the Civil Service Law.  Plaintiff is not covered by the ADA or New York Executive Law, as it is undisputed that he cannot perform the essential functions of the job.  Moreover, Plaintiff was not even diagnosed with any medical condition until about one month after he had left employment.  He never took advantage of any internal complaint procedures available to County employees regarding discrimination, and none of the actions in this case were taken because of his disability.  Plaintiff was terminated from employment in accordance with New York's Civil Service Law so there are legitimate nondiscriminatory reasons for the employment decisions in this case.

In New York only an "employer" can be liable under New York's Executive Law.  In Pa-trowich v. Chemical Bank, 63 N.Y.2d 541 (1984), the New York Court of Appeals held that an employee may not be sued individually under the New York State Human Rights Law "if he is not shown to have any ownership interest or any power to do more than carry out personnel deci-sions made by others." See also, Dorvil v Hilton Hotels Corp., 25 A.D.3d 442 (1st Dep't 2006); Gallegos v Elite Model Mgmt. Corp., 28 A.D.3d 50 (1st Dep't 2005).  In this case, none of the Defendants took any adverse employment action and none have any ownership interest.  Plaintiff was terminated from his employment under the Civil Service Law but may return to work over the next four years if he is medically released to do so.  Accordingly, all the individual Defen-dants should be dismissed from liability for any claim under New York's Executive Law.

At a minimum, this Court should exercise its discretion not to review this matter under the doctrine of supplemental jurisdiction.  See 28 U.S.C. §1367(c)(3).

## CONCLUSION

For all of the foregoing reason, the Rensselaer County Defendants respectfully request that the Court grant its motion for summary judgment in its entirety.

Dated: July 29, 2016

**MARTIN & RAYHILL, PC**

*Kevin G. Martin*

By: Kevin G. Martin, Esq.
Bar Roll No. 505332
*Attorneys for Rensselaer*
*County Defendants*
421 Broad St.
Utica, New York 13501
(315) 507-3765

25

kmartin@martinrayhill.com