UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

JOHN GORMAN,

                        Plaintiff,

      v.                                              Civil Action No. 1:14-cv-434
                                                    (LEK/RFT)

RENSSELAER COUNTY, SHERIFF JACK
MAHAR, ANTHONY PATRICELLI,
UNDERSHERIFF PATRICK RUSSO,
COUNTY HUMAN RESOURCES MANAGER
TOM HENDRY, COUNTY EXECUTIVE
KATHLEEN JIMINO, DR. WILLIAM MCINTYRE,
PUBLIC SAFETY PSYCHOLOGY, PLLC,

                        Defendants.
───────────────────────────────────────────────

## REPLY MEMORANDUM OF LAW IN SUPPORT OF RENSSELAER COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

 

MARTIN & RAYHILL, PC
*Attorneys for Rensselaer County Defendants*
421 Broad St., #10
Utica, New York 13501
(315) 507-3765
kmartin@martinrayhill.com

Of Counsel:
Kevin G. Martin, Esq.
Bar Roll No. 505332

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT 1

ARGUMENT

POINT I

PLAINTIFF'S ADA CLAIMS MIUST BE DISMISSED 1

POINT II

PLAINTIFF'S ASSOCIATIONAL CLAIM MUST BE DISMISSED 3

POINT III

PLAINTIFF'S RETALIATION CLAIM MUST BE DISMISSED 5

POINT IV

NO PROOF OF MONELL OR INDIVIDUAL LIABILITY 9

CONCLUSION 10

# TABLE OF AUTHORITIES

Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999) — 5

Anemone v. Metropolitan Transp. Auth., 629 F.3d 97 (2d Cir. 2011) — 8

Boughton v. Town of Bethlehem, 2015 U.S. Dist. LEXIS 120413 (N.D.N.Y. 2015) — 2

Boylan v. Arruda, 42 F. Supp.2d 352 (S.D.N.Y. 1999) — 8,10

Cotarelo v. Sleepy Hollow Police Dep't, 460 F.3d 247 (2d Cir. 2006) — 4

DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983) — 9

Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) — 4

Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007) — 9

Garcetti v. Ceballos, 547 U.S. 410 (2006) — 6

Green v. City of New York, 465 F.3d 65 (2d Cir. 2006) — 9

Heil v. Santoro, 147 F.3d 103, 105 (2d Cir. 1998) — 8

Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011) — 6

Jermosen v. Smith, 9456 F.2s 547, 550 (2d Cir. 1991) — 5

Lingle v. Norge Div. of Magic Chef Inc., 486 U.S. 399, 405-06 (1988) — 9

Locurto v. Safir, 264 F.3d 154, 158 (2d Cir. 2001) — 8

Malley v. Briggs, 475 U.S. 335, 343 (1986) — 5

Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) — 8

Mt. Healthy v. Doyle, 429 U.S. 274, 287 (1977) — 8

Nagle v. Marron, 663 F.3d 100, 106-07 (2d Cir. 2011) — 6

Newton v. City of New York, 738 F.Supp.2d 397 (S.D.N.Y. 2010) — 7

Patel v. Searles, 305 F.3d 130 (2d Cir. 2002)     3

PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002).     1

Radolf v. Univ. of Connecticut, 364 F. Supp. 2d 204, 225 (D.Conn. 2005)     10

Rider v. Town of Farmington, 162 F. Supp. 2d 45, 53 (D. Conn. 2001)     10

Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)     5

Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010)     7

Stavitz v. City of New York, 98 A.D.2d 529 (1st Dep't 1984)     10

Weintraub v. Bd. of Education, 593 F.3d 196 (2d Cir.), cert. denied,
131 S.Ct. 44, 178 L.Ed.2d 344 (2010)     6

Statutes

42 U.S.C. §1983     *passim*

42 U.S.C. § 12131(1)     1

N.Y. Civil Service law §73 (McKinney's 2015)     5

N.Y. Civil Service law §75-b (McKinney's 2015)     1

N.Y. General Municipal Law Section 207-c (McKinney's 2015)     8

N.Y. Labor Law §740 (McKinneys 2013)     1

**PRELIMINARY STATEMENT**

Plaintiff did not respond to five arguments in Defendants' motion and thus concedes he has no viable claim under: 1) N.Y. Labor Law §720, 2) New York Civil Service Law §75-b, 3) the equal protection clause, 4) the Americans with Disabilities Act ("ADA") or New York Executive Law against the individual defendants as they are not "employers" subject to those statutes (42 U.S.C. § 12131(1)), and 5) Section 1983 for punitive damages against Rensselaer County and the individual defendants in their official capacities. It is well settled that the burden on the Defendants in a motion for summary judgment may be discharged by showing a lack of evidence to support the Plaintiff's case. PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). As explained in the original memorandum of law and below, there is no evidence that would entitle Plaintiff to a jury trial on the remaining claims.

**POINT I - PLAINTIFF'S ADA CLAIMS MUST BE DISMISSED**

Plaintiff's ADA claims are untimely, and the undisputed proof shows that his termination was lawful. Under New York's Civil Service Law §73, the County may terminate an employee who has been out of work for a year or more. Termination pursuant to N.Y. Civil Service Law §73 was not discriminatory because it is primarily for administrative convenience to allow the County to fill the position and avoid overtime costs. Mahar Tr. 221. Under §73, the County would "have to take [Gorman] back if he is medically cleared" within one year of termination, and he is eligible for reinstatement for up to four (4) years. Mahar Tr. 222. Gorman could come back to work tomorrow if he is medically cleared to do so, but it is undisputed that he has not provided such medical clearance nor could he. Gorman Tr. 143, 217, 231-32. In this case, Plaintiff has offered no proof that the §73 termination is pretext for discrimination. Plaintiff left work

on July 14, 2013, and on June 24, 2014 received "notification that [his] employment will be terminated effective July 15, 2014." Second Amended Complaint at ¶182. Plaintiff admits in his EEOC Complaint that he received "an official letter of termination indicating that [he] would be terminated on July 15, 2014 for being out of work for more than 12 months for non-work related injury." Affirmation of Kevin Martin dated August 26, 2016 at Exhibit "A". The June 23, 2014 notification under §73 was a "form" letter sent as a matter of course under County policy. See Mahar Tr. 211-13. Plaintiff's cause of action accrued when he was *first* notified of termination on June 23. Accordingly, the May 28, 2015 complaint is untimely. The time to file is not extended by the opportunity to appeal the decision to a due process hearing.

Plaintiff's disability act claims should also be dismissed because there is no proof that Plaintiff is a qualified individual with a disability who can perform the essential functions of the job. Gorman has been diagnosed with PTSD and there is no proof it has impacted any major life activity, other than working at the jail facility. Gorman testified his own doctor has "never released me to go back to the correctional facility as a corrections officer." Gorman Tr. 143. Gorman's doctor doesn't even want him working at the lower stress "no demand" job he is at now. Gorman TR. 143-144 ("If he had his choice, he would make me leave where I am now."). At his due process hearing on August 14, 2014, Gorman was specifically asked if he could return to work and he said "No, because of my current medical condition." Gorman Tr. 217. He has never explained what his limitations are. Boughton v. Town of Bethlehem, 2015 U.S. Dist. LEXIS 120413 (N.D.N.Y. 2015) (employer may request information that plaintiff can return to work). Gorman also explained that his doctor had determined the he was "100 percent disabled from going back as a normal corrections officer." Gorman Tr. 226-27. This conversation with his doc-

tor occurred *after* he had received a letter requesting a medical evaluation. Gorman Tr. 227. Gorman discussed the letter request with his doctor but he has "not responded" or provided any medical information to the County for its evaluation. Gorman Tr. 231-32. Neither Gorman nor his doctor have said what any accommodation might be. Gorman Tr. 227. They had many chances to do so as both a due process hearing and a hearing for over an hour with Civil Service invited such information. Gorman Tr. 150. Gorman speculates that he might be able to do a light duty assignment but those positions do not exist unless an employee has a work related injury under 207-c. Mahar Tr. 199, 223. See also, N.Y. General Municipal Law §207-c(2). Even assuming Gorman's non-medical testimony raises an issue of fact that he could do light duty (no such medical evidence), and there was a light duty position available (no such evidence) Gorman is not eligible for light duty because he was not eligible for 207-c benefits. Dr. McIntyre's determination was adopted by UnderSheriff Russo and has been affirmed in arbitration. In addition, when Plaintiff applied for Workers Compensation and 207-c benefits he certified that he was unable to perform his duties as a corrections officer. He pursued workers compensation benefits through June 24, 2014. Gorman Tr. 202. Accordingly, by his own admission, Plaintiff can not perform the essential functions of the corrections officer job. See Gorman Tr. 150.

**POINT II - PLAINTIFF'S ASSOCIATIONAL CLAIM MUST BE DISMISSED**

Plaintiff relies on one case to support his claim for infringement of his right to intimate association, Patel v. Searles, 305 F.3d 130 (2d Cir. 2002). In Patel, the plaintiff alleged the police falsely accused him of murdering his own mother and sister, and as a result "his relationships with family and friends were impaired. . ." Patel, 305 F.3d at 136. The issue in Patel was whether the police had caused him to be primarily ostracized from his wife and children. Id. at

137 ("... plaintiff alleges Detective Swanson gave his wife false and defamatory information to make her fear for her own and her children's lives."). There was no brother-sister relationship discussed or at issue (his sister had been murdered). The father and siblings are briefly mentioned in dicta but the holding on this point is not clear. In any event, Gorman has not alleged facts to support the conclusion that his family relationships have been *impaired* in any way. Mr. Gorman's testimony shows that Patricelli only spoke to him on two or three occasions total and that he never saw him at all outside of work. Gorman Tr. 43. Gorman testified that the first phone call in October 2012 and the West Hall incident his sister was never mentioned. Gorman Tr. 36, 39. The only other discussion with Patricelli was the February 15, 2013 call when Patricelli asks where Gorman's sister is. Gorman Tr. 68. There is simply no proof of any impact on Gorman's relationship with his sister at all. Patricelli was allegedly upset that Gorman disclosed his infidelity. Patricelli would have been just as upset if Gorman was unrelated to his ex-girlfriend.

Plaintiff must also show there is a causal connection between the association with his sister and some adverse employment action. Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000). The causal connection must be sufficient to warrant the inference that the association was a substantial motivating factor in the adverse employment action." Cotarelo v. Sleepy Hollow Police Dep't, 460 F.3d 247 (2d Cir. 2006). Gorman has admitted that he did not face any actual discipline while he was working. Gorman Tr. 37, 42. Patricelli never took any adverse employment action against Gorman and was not in a position to do so. Patricelli Aff. at ¶8-9. There is no allegation or proof that the other Defendants even knew about any impact on Gorman's relationship with his sister. Accordingly, there is no basis to hold that the Defendants took any action against Gorman because of his sister.

4

All of the Defendants are qualifiedly immune to the First Amendment association claim as well. The only case that even discusses sibling relationships in the Second Circuit, Patel, is completely distinguishable, and does not "clearly establish" the law with "reasonable specificity", which the Defendants in this case would have to violate "knowingly". See Malley v. Briggs, 475 U.S. 335, 343 (1986); Jermosen v. Smith, 9456 F.2s 547, 550 (2d Cir. 1991). The rights discussed in Patel stem from Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). Sibling relationships are not mentioned in Roberts and play no part in the reasoning of the case. However, the Court points out the Jaycees' First Amendment rights were not burdened since they could still engage in political, economic and cultural affairs. That is also the case here. It is undisputed that Plaintiff's relationship with his sister has not been *burdened* in any way. He is absolutely free to associate with his sister. Even if Patricelli had asked Gorman to intervene on his behalf, this is not an impairment of the relationship as in Patel and anyone with influence over the sister could have been asked to help. The brother-sister relationship is immaterial. The case law is far from clear that there is protection for the brother-sister relationship in the circumstances of this case, and Defendants should be qualifiedly immune from any such claim. See Adler v. Pataki, 185 F.3d 35, 45 (2d Cir. 1999)( all defendants immune where plaintiff was fired because of wife's lawsuit against the State; protection for even husband-wife relationship "is far from clear" and source of the right of intimate relationships has never been determined and is not "free from doubt").

**POINT III - PLAINTIFF'S RETALIATION CLAIM MUST BE DISMISSED**

Plaintiff concedes his issues with Patricelli do not constitute matters of public concern, but argues that his alleged refusal to corroborate that Chief Vibert disclosed information about

5

Patricelli is protected. First, Sherrif Mahar found after investigation that Patricelli's allegation against Vibert were unfounded, entirely consistently with Gorman's statement. Mahar Tr. 107-08. Moreover, whether or not Vibert disclosed personal information about Patricelli is not a matter of public concern. See Sousa v. Roque, 578 F.3d 164, 173 (2d Cir. 2009)(conditions of employment not public concern). In Weintraub v. Bd. of Education, 593 F.3d 196 (2d Cir.), cert. denied, 131 S.Ct. 44, 178 L.Ed.2d 344 (2010), the Second Circuit held that a public employee who makes statements that have "no relevant analogue to speech by civilians who are not government employees," are not protected by the First Amendment. In this case, Gorman's discussion with Mahar has no analogue to civilian speech. It was part of an investigation into Patricelli's personnel complaint. Jackler v. Byrne, 658 F.d 225 (2d Cir. 2011) does not compel a contrary conclusion. In that case the plaintiff's protected speech was made in the context of an official investigation into a civilian complaint of excessive force. Jackler, 658 F.3d at 230. The court reiterated the holding of Wientraub and held that the employee's expression must relate to matters of "political, social, or other concern to the community" and that statements made to a supervisor about misconduct as part of official duties are statements as an employee and are not protected. Jackler, 658 F.3d at 233. See also, Garcetti v. Ceballos, 547 U.S. 410 (2006).

  Plaintiff's complaints that Patricelli had asked someone to access the e-Justice system and that Patricelli had harassed him on the telephone are also not protected because they do not touch on matters of public concern. As the Second Circuit has recently held, "[n]o authority supports [the] argument that reporting an alleged crime always implicates matters of public concern." Nagle v. Marron, 663 F.3d at 107 (report of forgery not entitled to First Amendment protection as it "had no practical significance to the public"). These statements are also not

6

causally related to any adverse employment action. The report of Patricelli's accessing of the e-Justice system occurred in late May 2013, Patricelli was suspended from work in mid-June, and Plaintiff was out of work by July 14. Plaintiff's report regarding the February 15 phone call was not followed by any disciplinary action. Gorman had already been moved back to the position of corrections officer in accordance with New York Civil Service Law. Mahar Tr. 129; Gorman Tr. 58-59. As Mahar testified, Gorman was never legally reachable for the position of Sergeant under New York's Civil Service Law and those decisions were made *prior* to February 15. Mahar Tr. 131, 140, 142. Gorman complains that the Civil Service list included the name of an employee who was allegedly leaving the Sheriff's Department but as Mahar explained, this was not his fault and he cannot assume the employee had taken another position. Mahar Tr 132, 144. Mahar is certainly not liable for any mistake of the Commission. Moreover, the gentleman on the list (Mr. Lucey) was not selected and Gorman's score of 80 was still not reachable. Mahar Tr. 139, 141, 148. At a minimum, the Defendants are qualifiedly immune from a claim of retaliation as the law is not clearly established that Gorman's complaints regarding the e-commerce system or harassment are protected speech and Defendants did not knowingly violate this standard. Hunter v. Bryant, 502 U.S. 224, 229 (1991)(qualified immunity protects "all but the plainly incompetent or those knowingly violating the law"). The dispositive inquiry in determining whether a right is "clearly established" is whether it would be clear to a reasonable public employee that his conduct was unlawful in the situation he confronted. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal.'" Newton v. City of New York, 738 F.Supp.2d 397 (S.D.N.Y. 2010) (quoting Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010)). "The employee's rights must have been so clear that

7

no reasonable public official could have believed that his actions did not violate plaintiff's rights." Boylan v. Arruda, 42 F. Supp.2d 352 (S.D.N.Y. 1999). No case law "clearly establishes" that Plaintiff's statements regarding Vibert, e-commerce or harassment, or the brother-sister relationship, are protected and thus Defendants are entitled to qualified immunity.

The First Amendment retaliation claims in this case should also be dismissed because Plaintiff cannot show that he has suffered a materially adverse employment action *as a result of his First Amendment association or speech*. See, e.g., Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007); Locurto v. Safir, 264 F.3d 154, 158 (2d Cir. 2001); Heil v. Santoro, 147 F.3d 103, 105 (2d Cir. 1998). Plaintiff alleges that there was ongoing, subtle harassment by Patricelli, an individual employee but no real discipline. In Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), which involved claims under §1983, the Second Circuit affirmed dismissal stating that "the transfer here involved [no] change in job description, days and hours, duties, benefits, or opportunity for promotion. It follows that the transfer was not an adverse employment action." Morris, 196 F.3d at 113. In this case, no adverse employment action was taken against Plaintiff until after he had been out on medical leave for more than a year under Civil Service Law §73. Even if Plaintiff could make out a prima facie retaliation claim, Defendants are entitled to summary judgment "even if there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." Anemone v. Metropolitan Transp. Auth., 629 F.3d 97 (2d Cir. 2011) (quoting Mt. Healthy v. Doyle, 429 U.S. 274, 287 (1977). As explained above, the Civil Service §73 termination was a form normally sent out for administrative convenience not because of any First Amendment rights. Mahar Tr 212. Mahar didn't re-

8

member signing it. Mahar Tr. 211. Similarly, Plaintiff claims his 207-c and other benefits were denied in retaliation for his complaints because of Mahar, yet Mahar too no part in the 207-c matter, Plaintiff had no right to 207-c benefits as a result of Dr. McIntyre, and Plaintiff lost after an arbitration hearing. These are all legitimate non-discriminatory reasons. Plaintiff complains Mahar directed other employees but there is no admissible proof of that. He claims that he was not allowed to use a sick bank, that he lost bidding rights and was denied accrual of leave time. All of these are contractual matters subject to the collective bargaining agreement and the grievance process. See Lingle v. Norge Div. of Magic Chef Inc., 486 U.S. 399, 405-06 (1988) (LMRA Section 301 preempts claim that a party has violated collective bargaining agreement). Plaintiff admits he filed grievances over these workplace issues and lost (Gorman Tr. 142). He is barred from alleging constitutional violations now, as he did not sue for breach of duty of fair representation. DelCostello v. Int'l Broth. of Teamsters, 462 U.S. 151, 165 (1983). In sum, all of these issues had nondiscriminatory bases and none were shown to have happened due to retaliation.

**POINT IV - NO PROOF OF MONELL OR INDIVIDUAL LIABILITY**

Rensselaer County may not be vicariously liable for an unconstitutional action by an individual employee. Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006). Plaintiff argues that Sherriff Mahar's actions should be imputed to the County given his high position. This is incorrect as a matter of law. The actions of the Sheriff had to be in furtherance of his official duties or so persistent as to amount to a custom or usage. Patterson v. Oneida County, 375 F.3d 206, 226 (2d Cir. 2004). Plaintiff does not show any facts that could support such a Monell claim. The Section 1983 claim against Jimino, Mahar, Russo, Hendry and Patricelli are equally lacking. Plaintiff barely mentions County Executive Jimino and merely describes failed attempts to con-

tact her. Plaintiff mentions Defendant Hendry solely in connection with his work place violence complaints. Plaintiff is unsatisfied with Mr. Hendry's responses following his investigation, but this falls far short of a constitutional violation. Plaintiff alleges he met with Undersheriff Russo only once, about a month before he went out on medical leave and disputes what Russo did or didn't send to Mr. Hendry for the work place violence investigation. Russo is not mentioned otherwise, except that he received letters from Plaintiff's physician and held the due process hearing. See Second Amended Complaint at 153, 156. The allegations against Sheriff Mahar are that he asked Plaintiff to give false testimony about Chief Vibert, took Plaintiff off the provisional Sergeant list, and instigated another employee to harass him. These allegations rely on inadmissible hearsay and fall far short of demonstrating any *constitutional* deprivation. Finally, Plaintiff claims that Patricelli scrutinized him at work, or had others do it, and called Plaintiff at home or when he was off duty on the phone. Cases in the Second Circuit hold that investigation alone is not a materially adverse employment action. See, e.g., Radolf v. Univ. of Connecticut, 364 F. Supp. 2d 204, 225 (D.Conn. 2005); Rider v. Town of Farmington, 162 F. Supp. 2d 45, 53 (D. Conn. 2001); Boylan v. Arruda, 42 F. Supp. 2d 352, 357 (S.D.N.Y. 1999). The bottom line is this was a purely private dispute and Patricelli was not acting in furtherance of his duties in a way that would result in Section 1983 liability. See Stavitz v. City of New York, 98 A.D.2d 529 (1st Dep't 1984) (matter personal in nature is not within scope of employment).

**CONCLUSION**

For the foregoing reasons, and the reasons articulated in their initial brief, the Rensselaer County Defendants respectfully request that the Court grant their motion for summary judgment.

Dated August 26, 201                            **MARTIN & RAYHILL, PC**

*Kevin G. Martin*
_____

By: Kevin G. Martin, Esq.
Bar Roll No. 505332
*Attorneys for Rennselaer County Defendants*
421 Broad St.
Utica, New York 13501
 (315) 507-3765
kmartin@martinrayhill.com

TO: Patrick Sorsby, Esq.
Bar Roll No. 517840
*Attorney for Plaintiff*
1568 Central Ave.
Albany, NY 12205
(518) 545-4529
sorsbylaw@gmail.com